**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| THE ESTATE OF MARILYN MONROE, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| FASHION CENTRAL LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff The Estate of Marilyn Monroe, LLC (the "**Monroe Estate**"), hereby alleges, by and

through its attorneys, Katten Muchin Rosenman, LLP, its complaint against Defendant Fashion

Central LLC ("**Fashion Central**"), as follows:

## NATURE OF THE CASE

1.      This action arises from Fashion Central's blatant and unsanctioned attempt to

capitalize on the fame, popularity and renown of an American legend.  There are few names in the

cultural lexicon that call to mind as singular a likeness as Marilyn Monroe.  When consumers see her

name they picture her face, and when they see her face it evokes her name.  The Monroe Estate

brings this action under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, New York statutory and common

law, seeking equitable relief and damages based on Defendant's unauthorized use and exploitation of

intellectual property rights owned exclusively by the Monroe Estate.  Defendant's illegal actions are

likely to cause confusion as to the affiliation, connection, association, origin, sponsorship or approval

of goods with those authorized by the Monroe Estate, and dilute the famous MARILYN MONROE

name and trademarks. The Monroe Estate seeks, without limitation, actual damages, an account of profits, treble damages, attorneys' fees, costs and injunctive relief.

## PARTIES

2.     Plaintiff The Estate of Marilyn Monroe, LLC is a Delaware limited liability company, with a place of business at 1411 Broadway, 4th Floor, New York, New York 10018.

3.     Defendant Fashion Central is a New Jersey limited liability company, with a place of business at 149 Madison Avenue, 10th Floor, New York, New York 10016.

## JURISDICTION AND VENUE

4.     This action arises under the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*, and New York statutory and common law.

5.     This Court has jurisdiction over the subject matter of Counts I–III of this Complaint pursuant to 15 U.S.C. §§ 1114 and 1125 and 28 U.S.C. §§ 1331 and 1338.

6.     Pursuant to 28 U.S.C. §§ 1367(a) and 1338(b), this Court has supplemental jurisdiction over Counts IV–VII in this Complaint, which arise under the statutes and common law of New York, because those claims are so related to the federal claims arising under the Lanham Act that they form part of the same case or controversy and derive from a common nucleus of operative facts.

7.     This Court has jurisdiction over Defendant and venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is located in this judicial district, Defendant transacts, solicits and conducts business in this judicial district, and a substantial part of the activity about which the Monroe Estate complains has taken place, and is continuing to take place, in this judicial district.

## FACTS

8.     Marilyn Monroe ("**Monroe**") was a renowned actress, model, singer and humanitarian.

Marilyn Monroe is one of the most consistently recognizable celebrities of all time.

9.      The Monroe Estate is a brand development and licensing company that exclusively owns, among other things, a comprehensive family of domestic and international trademark and service mark rights, as well as the exclusive rights in and to Monroe's identity, persona, image, name and likeness (the **"Monroe Rights"**), and, as to all of the foregoing, the exclusive right to license the Monroe Rights to third parties.

10.     For over three decades, since at least as early as 1983, the distinctive MARILYN MONROE trademarks, as well as formatives, variations and extensions thereof, and other indicia associated with Monroe's persona, such as her signature, have been continuously used by the Monroe Estate and its predecessors in connection with the manufacture, licensing, distribution, promotion and sale of a wide range of goods and services, including wearing apparel and other licensed merchandise.  Section 43(a) of the Lanham Act confers upon the Monroe Estate exclusive property rights, akin to trademark rights, in the distinctive aspects of Marilyn Monroe's persona.  This includes, without limitation, Monroe's image when used as a source identifier or brand.

11.     The United States Patent & Trademark Office (**"PTO"**) has issued the following trademark registrations, further evidencing the distinctiveness of the MARILYN MONROE name and associated indicia (collectively the **"MONROE Marks"**):

| Mark | Registration Number | International Class(es) | Registration Date |
| --- | --- | --- | --- |
| *[signature]* | **Reg** 1,509,758 | 3, 14, 16, 25, 28 | 10/25/1988 |
| *[signature]* | **Reg** 1,889,730 | 9, 16, 21, 24, 28, 33, 35 | 4/18/1995 |
| MARILYN MONROE | **Reg** 2,180,950 | 16 | 8/11/1998 |
| MARILYN MONROE | **Reg** 2,223,599 | 25 | 2/16/1999 |
| MARILYN MONROE | **Reg** 2,985,935 | 18 | 8/16/2005 |
| MARILYN MONROE | **Reg** 4,336,364 | 14 | 5/14/2013 |
| MARILYN MONROE | **Reg** 4,419,275 | 14 | 10/15/2013 |

| MARILYN MONROE | Reg 4,487,208 | 35 | 2/25/2014 |
| MARILYN MONROE | Reg 4,487,210 | 41 | 2/25/2014 |
| MARILYN MONROE | Reg 4,511,420 | 44 | 4/8/2014 |
| MARILYN MONROE | Reg 4,527,088 | 16, 25, 27 | 5/6/2014 |
| MARILYN MONROE | Reg 4,743,834 | 21 | 5/26/2015 |
| MARILYN MONROE | Reg 4,758,793 | 3 | 6/23/2015 |
| *[signature]* | Reg 4,758,794 | 3 | 6/23/2015 |

12.    Each of the foregoing registrations is valid, subsisting and in full force and effect. Registration Nos. 1,509,758; 1,889,730; 2,180,950; and 2,223,599 have become incontestable within the meaning of 15 U.S.C. §§ 1065 and 1115(b), and, as such, provide incontrovertible evidence of the validity of the MONROE Marks. All of these federal registrations also demonstrate exclusive ownership by the Monroe Estate of the MONROE Marks, and its exclusive rights to use (and permit others to use) the MONROE Marks for, on and in connection with the specified goods and services. Copies of printouts from the PTO's TSDR Database evidencing the foregoing registrations are attached hereto as Exhibit A. The MONROE Marks, together with the Monroe Rights, are hereinafter collectively defined as the "**Monroe Intellectual Property**."

13.    The Monroe Intellectual Property has been the subject of licenses granted by the Monroe Estate and its predecessors to third parties to use and exploit such rights on or in connection with various goods and services for decades, including licenses for clothing, intimate apparel, accessories, games, perfume, dolls, posters, collectibles, housewares and other merchandise. The Monroe Estate's authorized licensees currently offer for sale, promote and sell many categories of goods, including but not limited to, intimate apparel, as shown below. Authentic licensed intimate apparel is sold through a variety of distribution outlets, including without limitation, department stores, high-end department stores, and online retailers. A component of such licensing rights typically allows a licensee to use one or more photographic images or other indicia of Monroe on

related packaging, labels, tags or other traditional source identifiers.



14.     The extensive authorized exploitation of the Monroe Intellectual Property in the marketplace has undoubtedly invested the same with secondary meaning. The Monroe Estate and its predecessors have expended significant money and effort to exploit, enforce, promote and advertise the Monroe Intellectual Property throughout the world, such that the trade and consumers understand that Monroe is not only an iconic figure in popular culture, but also a source-identifying brand. Monroe has been praised in modern media as one of the "10 Most Admired Women in the World" (Kiran Yasmin, 10 Most Admired Women in the World, Wonderlist (last visited Nov. 3, 2016), http://www.wonderslist.com/10-most-admired-women/), one of the "10 Most Famous Women in History" (Erkan, 10 Most Famous Women in History, The Most 10 (March 31, 2012), http://www.themost10.com/10-most-famous-women-in-history/), and one of the "Most Famous Blondes of All Time" (Dana Oliver, The Most Famous Blondes of All Time, The Huffington Post (Nov. 20, 2015), http://www.huffingtonpost.com/entry/famous-blondes-all-time_us_564ce27fe4b031745cef710b).

15.     Due to the enduring legacy of Monroe as a symbol of sexy, stylish elegance, the MONROE Marks have supported significant sales of licensed merchandise and services, garnered widespread publicity and imbued the Monroe Intellectual Property with strong consumer recognition and reputational value. The Monroe Intellectual Property is famous and highly distinctive.

### DEFENDANT'S UNLAWFUL ACTIVITIES

16.    Upon information and belief, Fashion Central is a New York City-based manufacturer and wholesaler of intimate apparel.

17.    Fashion Central uses Monroe's image on packaging and hangtags for intimate apparel and related promotional materials targeted to retailers in both the United States and elsewhere.

18.    Fashion Central places Monroe's image on the packaging and hangtags where source-identifying information is frequently and traditionally conveyed to the consumer, as shown below. In fact, Fashion Central's goods bear no other source identifier, trademark or brand indicia. Monroe's image is the *only* identifiable indication of "source," albeit unauthorized, visible on Fashion Central's garments (including hangtags and materials affixed on the garments):



19.     Additionally, Monroe's image is placed alongside phrases that further allude to her identity, name and persona (e.g., "Intimates are a woman's best friend;" "she was an iconic global movie star;" "timeless beauty;" and "the world is all yours to shape"). It is undeniable that Defendant's use of Monroe's image is intended to exploit her celebrity and goodwill in order to increase sales of Defendant's products, as well as to mislead the public to believe that these goods are legitimate licensed products authorized by the Monroe Estate.

20.     Merchandise offered for sale or sold by Defendant is inferior in style, fabrication, design and quality; and, as such, is likely to cause injury to the Monroe Estate's reputation as the provider of high quality goods and services.

21.     Various retailers have contacted the Monroe Estate under the assumption that Defendant's products were approved, licensed, sponsored, endorsed and/or authorized by the Monroe Estate.  Such retailer confusion is evidence of confusion in the marketplace engendered by the Defendant's unauthorized activities.

22.     Defendant's unlicensed production, distribution, offering for sale and sale of inferior-quality, lower-priced items of intimate apparel bearing Monroe's image, in particular as a brand indicia, is likely to have an adverse impact on the sale of the Monroe Estate's officially-licensed products, potentially reflects adversely upon the Monroe Estate's licensed sellers, and diminishes the demand for officially-licensed products (especially intimate apparel).

23.     Defendant's unlicensed production, distribution, offering for sale and sale of inferior-quality, lower-priced intimate apparel bearing Monroe's image, in particular as a brand indicia, also deprives the Monroe Estate of the ability to control the quality of goods and services offered in connection with the Monroe Intellectual Property, and, instead, places the Monroe Estate's valuable reputation and goodwill into the hands the Defendant, over whom the Monroe Estate has no control.

24.    On or about August 8, 2016, promptly upon becoming aware of Defendant's activities, the Monroe Estate contacted Fashion Central by letter, requesting that Fashion Central cease and desist from any further use of the Monroe Intellectual Property in connection with the display, marketing, distribution and/or sale of any products and/or services bearing the Monroe Intellectual Property or anything confusingly similar thereto. The unauthorized conduct continued.

25.    On or about August 24, 2016, the Monroe Estate sent a second letter to Fashion Central, reiterating its requests set forth in its August 8, 2016 letter. Again, the unauthorized conduct continued.

26.    On or about October 7, 2016, counsel representing the Monroe Estate sent another letter to Fashion Central, reiterating the Monroe Estate's requests set forth in the August 8, 2016 and August 24, 2016, letters. Again, the unauthorized conduct continued, unabated, and continues to the date of this Complaint.

27.    Defendant's use of the Monroe Intellectual Property is likely to cause confusion, mistake, or deception among consumers, the trade, retailers, and others as to the source or origin of Defendant's products, and is likely to falsely suggest a sponsorship, endorsement, connection, license, or association between Defendant's products, Defendant, and the Monroe Estate (or its authorized licensees, or both).

28.    On information and belief, Defendant was aware of the Monroe Estate's prior rights in its famous Monroe Intellectual Property before engaging in the unlawful activity. Further, after being placed on express notice of its infringement of the Monroe Estate's rights, Defendant has continued its use and promotion of the Monroe Intellectual Property in bad faith and in a deliberate and willful attempt to trade on the extensive and exclusive goodwill the Monroe Estate has developed in the Monroe Intellectual Property. In particular, Fashion Central is profiting and/or intending to profit by

creating a false association with the Monroe Estate through its unauthorized use of Monroe's image as a brand indicia, and by leveraging that false association to sell products. Defendant has thus acted willfully and intentionally with respect to Plaintiff's exclusive rights, and with complete disregard of those rights.

29.     Defendant's actions described above have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure the Monroe Estate, the MONROE Marks, and the long-earned reputation and goodwill associated with the Monroe Intellectual Property.

30.     Plaintiff has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF
### False Designation of Association, Origin and Unfair Competition
### Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

31.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 30 of this Complaint.

32.     Defendant's unauthorized use in commerce of the Monroe Intellectual Property and indicia of Monroe's identity and persona as alleged herein wrongfully and falsely designates the products offered by Defendant as (a) being authentic licensed merchandise; (b) originating with or authorized by the Monroe Estate, and/or its authorized licensees; and (c) being associated, affiliated or connected with, or approved, endorsed or sponsored by, the Monroe Estate, and/or its authorized licensees, and thus constitute use of a false designation of origin, false endorsement and misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

33.     Defendant's actions have already caused confusion in the marketplace, and are likely to

continue to cause consumer confusion, with the Monroe Estate's use of its Monroe Intellectual Property; to cause the trade and public to believe that Defendant's goods are affiliated with, or authorized, sponsored or endorsed by, the Monroe Estate, and/or its authorized licensees, which they are not; and to result in Defendant's unfairly and unlawfully benefitting from the Monroe Estate's goodwill, all in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

34.    On information and belief, the actions of Defendant described above at all times relevant to this action have been, and continue to be, willful.  Defendant was put on notice in multiple instances of the Monroe Estate's objection to Defendant's use of the Monroe Intellectual Property, but has used and continues to use the Monroe Intellectual Property in bad faith, and in deliberate and willful disregard for the Monroe Estate's exclusive rights therein.

35.    As a direct and proximate result of the Defendant's wrongful acts, the Monroe Estate suffered and continues to suffer and/or is likely to suffer damage to the MONROE Marks, and their reputation and goodwill, and its ability to exploit and license others to exploit such marks.

**SECOND CLAIM FOR RELIEF**
**Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

36.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 35 of this Complaint.

37.    Based on the undisputed worldwide distinctiveness of the MONROE Marks; the duration and extent of use of the MONROE Marks; the duration and extent of advertising featuring the MONROE Marks; the geographic area in which the Monroe Estate has sold and advertised services and products featuring the MONROE Marks; the nature of the trade channels the Monroe Estate and its authorized licensees use to market authentic products featuring the MONROE Marks, compared to the trade channels through which Defendant sells and intends to sell its products; the

degree of public recognition of the MONROE Marks; and the numerous federal registrations of the MONROE Marks, the MONROE Marks have become famous, as that term is used in Section 43(c) of the Lanham Act, and have been famous for many years.

38.     The MONROE Marks have acquired distinction and strong secondary meaning through extensive, continuous and exclusive use of the MONROE Marks by the Monroe Estate and its predecessors, long before the Defendant began its unauthorized activities. Upon information and belief, the MONROE Marks had acquired distinction and strong secondary meaning long before the Defendant was even an incorporated entity.

39.     Defendant's actions described above, all occurring after the MONROE Marks became famous, are likely to cause dilution by blurring and dilution by tarnishment of the famous MONROE Marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

40.     On information and belief, the actions of Defendant described above at all times relevant to this action have been, and continue to be, willful.  Defendant was put on notice in multiple instances of the Monroe Estate's objection to Defendant's use of the Monroe Intellectual Property, but has used and continues to use the Monroe Intellectual Property in bad faith, and in deliberate and willful disregard for the Monroe Estate's exclusive rights therein.

41.     As a direct and proximate result of the actions of Defendant alleged above, the Monroe Estate has been damaged and will continue to be damaged.

### THIRD CLAIM FOR RELIEF
### Trademark Infringement Under Section 32(a)
### of the Lanham Act, 15 U.S.C. § 1114(a)

42.     Plaintiff hereby repeats and realleges each and every allegation set forth in paragraphs 1 through 41 of this Complaint.

43.     Without Plaintiff's consent, Defendant used and continues to use in commerce

reproductions, copies, and/or colorable imitations of the Monroe Intellectual Property in connection with the offering for sale, sale, promotion, and advertising of products that are likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

44.    On information and belief, Defendant's use of Monroe's likeness without the Monroe Estate's permission infringes the Monroe Estate's exclusive rights in and to the Monroe Intellectual Property.

45.    On information and belief, the actions of Defendant described above at all times relevant to this action have been, and continue to be, willful.  Defendant was put on notice in multiple instances of the Monroe Estate's objection to Defendant's use of the Monroe Intellectual Property, but has used and continues to use the Monroe Intellectual Property in bad faith, and in deliberate and willful disregard for the Monroe Estate's exclusive rights therein.

46.    As a direct and proximate result of the actions of Defendant alleged above, the Monroe Estate has been damaged and will continue to be damaged.

### FOURTH CLAIM FOR RELIEF
#### Common Law Unfair Competition and Misappropriation

47.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 46 of this Complaint.

48.    Defendant's actions described above constitute common law unfair competition and misappropriation of the Monroe Estate's goodwill under the common law of New York and other states.  As a result of Defendant's acts complained of herein, consumers have already experienced actual confusion, and are likely to continue to be confused; consumers are likely to believe that Defendant's goods are affiliated with, or authorized, sponsored or endorsed by, the Monroe Estate,

and/or its authorized licensees, which they are not; Defendant will unfairly and unlawfully benefit

from the Monroe Estate's expenditure of effort and resources in developing the goodwill associated

with the Monroe Intellectual Property; and the Monroe Estate has no control over the quality of

Defendant's goods – all causing harm to the Monroe Intellectual Property and the greater public, who

depend on the Monroe Estate's goods as having a certain level of quality and reliability.

49.    On information and belief, the actions of Defendant described above at all times

relevant to this action have been, and continue to be, willful.  Defendant was put on notice in

multiple instances of the Monroe Estate's objection to Defendant's use of the Monroe Intellectual

Property, but has used and continues to use the Monroe Intellectual Property in bad faith, and in

deliberate and willful disregard for the Monroe Estate's exclusive rights therein.

50.    Defendant's acts complained of herein are deceptive, misleading and unfair, and

constitute unfair competition in violation of the common law of the State of New York.

51.    As a direct and proximate result of the actions of Defendant alleged above, the

Monroe Estate has been damaged and will continue to be damaged.

### FIFTH CLAIM FOR RELIEF
### Dilution
### Under N.Y. Gen. Bus. Law § 360-l

52.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1

through 51 of this Complaint.

53.    Based on the distinctiveness of the MONROE Marks; the duration and extent of use of

the MONROE Marks; the duration and extent of advertising featuring the MONROE Marks; the

geographic area in which the Monroe Estate has sold and advertised services and products featuring

the MONROE Marks; the nature of the trade channels the Monroe Estate and its authorized licensees

use to market authentic products featuring the MONROE Marks, compared to the trade channels

through which Defendant sells and intends to sell its products; the degree of public recognition of the MONROE Marks; and the numerous federal registrations of the MONROE Marks, the MONROE Marks have become famous, as that term is used in Section 43(c) of the Lanham Act, and have been famous for many years.

54.    Defendant's actions described above, all occurring after the MONROE Marks became famous and distinctive, are likely to dilute to the distinctive quality of the MONROE Marks in violation of N.Y. Gen. Bus. Law§ 360-1.

55.    On information and belief, the actions of Defendant described above at all times relevant to this action have been, and continue to be, willful.  Defendant was put on notice in multiple instances of the Monroe Estate's objection to Defendant's use of the Monroe Intellectual Property, but has used and continues to use the Monroe Intellectual Property in bad faith, and in deliberate and willful disregard for the Monroe Estate's exclusive rights therein.

56.    As a direct and proximate result of the actions of Defendant alleged above, the Monroe Estate has been damaged and will continue to be damaged.

**SIXTH CLAIM FOR RELIEF**
**Common Law Trademark Infringement**

57.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 56 of this Complaint.

58.    Plaintiff exclusively owns and has developed common law rights in the MONROE Marks due to its longstanding, extensive and exclusive use of those marks in connection with, among other things, clothing and intimate apparel.

59.    Defendant is using the Monroe Intellectual Property in connection with intimate apparel to misleadingly suggest that Defendant is an authorized distributor of such goods, which it is

not.

60.     Defendant's actions described above constitute common law trademark infringement under the common law of New York and other states.

61.     Defendant's use of the MONROE Mark has already caused confusion in the marketplace, and is likely to continue to cause confusion in the marketplace; to cause the public and trade to believe that Defendant's goods are affiliated with, or sponsored or endorsed by, the Monroe Estate, which they are not; and to result in Defendant unfairly and unlawfully benefitting from an association with the Monroe Estate and its goodwill.

62.     On information and belief, the actions of Defendant described above at all times relevant to this action have been, and continue to be, willful.  Defendant was put on notice in multiple instances of the Monroe Estate's objection to Defendant's use of the Monroe Intellectual Property, but has used and continues to use the Monroe Intellectual Property in bad faith, and in deliberate and willful disregard for the Monroe Estate's exclusive rights therein.

63.     As a direct and proximate result of the actions of Defendant alleged above, the Monroe Estate has been damaged and will continue to be damaged.

## SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment

64.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 63 of this Complaint.

65.     By the conduct described above, Defendant has unjustly retained a benefit to the detriment of the Monroe Estate, and such benefit violates fundamental principles of justice, equity, and good conscience.

66.     Defendant's use of the Monroe Intellectual Property has already caused consumer

confusion, and is likely to continue to cause consumer confusion; to cause the public to believe that Defendant's goods are affiliated with, or sponsored or endorsed by, the Monroe Estate, which they are not; and to result in Defendant unfairly and unlawfully benefitting from an association with the Monroe Estate and its goodwill.

67.     On information and belief, the actions of Defendant described above have at all times relevant to this action been willful.  Defendant was put on notice in multiple instances of the Monroe Estate's objection to Defendant's use of the Monroe Intellectual Property, but has used and continues to use the Monroe Intellectual Property in bad faith, and in deliberate and willful disregard for the Monroe Estate's exclusive rights therein.

68.     As a direct and proximate result of the actions of Defendant alleged above, the Monroe Estate has been damaged and will continue to be damaged.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, the Monroe Estate prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.     An Order declaring that Defendant's use of the Monroe Intellectual Property infringes the Monroe Intellectual Property, is likely to dilute the Monroe Intellectual Property, and constitutes unfair competition, and deceptive and unlawful trade practices under federal and state law, as detailed above;

B.     An injunction preliminarily and permanently enjoining Defendant and its employees, officers, directors, principals, subsidiaries, related companies, and all persons in active concert or participation with any of them:

1. From using or registering any mark, graphic, domain name, or other source identifier that comprises or contains the wording Marilyn Monroe (or any cognizable formatives) or any images of Monroe's likeness or other designs, logos, or marks that are confusingly similar to or likely to dilute the Monroe Intellectual Property;

2. From representing by any means whatsoever, directly or indirectly, that Defendant, any products or services offered by Defendant, or any activities undertaken by Defendant, are associated with, connected in any way, authorized by or affiliated with the Monroe Estate or its authorized licensees; and

3. From assisting, aiding, or abetting any other person or business entity in engaging or performing any of the activities referred to in subparagraphs B(1) and (2) above;

C. An Order directing Defendant to immediately and permanently destroy merchandise, labels, hangtags, displays, brochures, catalogs, manuals, forms, stationery, signage, advertising and promotional materials and items, and any other materials and things that bear or display the Monroe Intellectual Property, or any other designs, logos, or marks that are confusingly similar to or likely to dilute the Monroe Intellectual Property;

E. An Order directing Defendant to file with this Court and serve on the Monroe Estate's attorneys, thirty (30) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which it has complied with the injunction;

F. An Order requiring Defendant to account for and pay to the Monroe Estate any and all profits arising from Defendant's unlawful activities described above, and that such profits be increased in accordance with 15 U.S.C. § 1117 and other applicable laws;

G.      An Order requiring Defendant to pay the Monroe Estate actual and compensatory damages in an amount as yet undetermined caused by Defendant's unlawful activities described above, and trebling such compensatory damages for payment to the Monroe Estate in accordance with 15 U.S.C. § 1117 and other applicable laws;

H.      An Order requiring Defendant to disgorge to the Monroe Estate any and all unjustly-gotten gains by virtue of its unlawful activities described above;

I.      An Order awarding the Monroe Estate compensatory, punitive, exemplary and/or statutory damages in an amount to be determined at trial;

J.      An Order requiring Defendant to pay the Monroe Estate's costs and attorneys' fees in an amount as yet undetermined under 15 U.S.C. § 1117 and other applicable laws; and

K.      Any other relief as the Court may deem just and appropriate.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Monroe Estate demands trial by jury in this action of all issues triable by jury in this matter.

Dated:  November 9, 2016

Respectfully submitted,

Karen Artz Ash
Jessica M. Garrett
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY  10022
Telephone:  (212) 940-8800
Fax:  (212) 940-8776
karen.ash@kattenlaw.com
jessica.garrett@kattenlaw.com

and

Floyd A. Mandell
Jeffrey A. Wakolbinger
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe Street
Chicago, IL 60661
Telephone: (312) 902-5200
Fax: (312) 902-1061
floyd.mandell@kattenlaw.com
jeff.wakolbinger@kattenlaw.com
*pro hac vice applications forthcoming*

*Attorneys for Plaintiff The Estate of Marilyn Monroe, LLC*